IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RON MOSLEY,

          Petitioner,

v.

S. OROSKI,

          Respondent.

NO. C05-4260 TEH

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND INSTRUCTIONS TO THE CLERK**

## I. INTRODUCTION

This is a petition for a writ of habeas corpus filed *pro se* by state prisoner Ron Mosley pursuant to 28 U.S.C. § 2254. Mosley challenges the state courts' denial of his petition for a writ of habeas corpus based on Governor Arnold Schwarzenegger's reversal of the Board of Prison Term's ("BPT's") decision to grant parole. Mosley alleges that the Governor's decision violated his plea agreement, was not supported by "some evidence," denied him the right to a jury trial, and constituted an Ex Post Facto application of the law. Having carefully considered the parties' papers and the record below, the Court hereby DENIES the petition for the reasons stated below.

## II. BACKGROUND

On August 19, 1985, Petitioner Mosley was involved in an argument with his employer, Edward Wallace. Wallace had hired Mosley to do yard work at Wallace's residence, and had agreed to pay Mosley approximately $60 for the work. Prior to completing the job, Mosley asked Wallace to pay him, but Wallace refused. Anticipating that Wallace would refuse to pay him, Mosley had armed himself with a knife before going to work that day. After Wallace refused to pay, Mosley stabbed Wallace to death with the knife. After the murder, Mosley covered Wallace's body with a sheet, went home to change

1 clothes, returned to Wallace's house with a friend, and burglarized the residence. Mosley
2 and his friend stole a television, a pistol, and Wallace's car. The next day, Mosley turned
3 himself in to the Oakland Police Department.

4      Mosley pleaded guilty to second degree murder in Alameda County Superior Court,
5 and he was sentenced to a term of 15 years to life, with a minimum parole eligibility of ten
6 years. Mosley is currently housed at San Quentin State Prison.

### a. Parole Proceedings

8      On October 22, 2004, the BPT conducted a parole review hearing for Mosley. This
9 was Mosley's fourth parole hearing before the BPT panel. On February 19, 2005, the BPT
10 approved Mosley for parole, and in a letter dated March 11, 2005, Mosley was informed that
11 the Governor had the authority to review and reverse the BPT decision. Answer at 17.

12      Thereafter, the Governor invoked his authority under California Penal Code § 3041.2
13 to review the decisions of the BPT. Answer, Ex. 4. Following a review of the decision, the
14 Governor reversed the grant of parole for various reasons identified in the decision. Among
15 the stated reasons was that Mosley had been disciplined five times in his first nine years of
16 incarceration, although the Governor noted that Mosley had not been disciplined in the last
17 ten years. The Governor also cited that Mosley was "counseled" on nine separate occasions
18 for failing to report to work assignments, including as recently as one year prior to his 2004
19 parole hearing, in addition to five occasions where he was counseled for other misconduct.
20 The Governor's decision stated that "this factor is of great concern . . . since the murder . . .
21 was employment related" and because it reflects on Mosley's "unwillingness or inability to
22 curb his behavior to the rules of his environment[.]" *Id.* The Governor's decision also
23 discussed Mosley's prior drug and alcohol abuse.

24      The Governor concluded that Mosley posed an unreasonable risk to public safety
25 because of the nature of the underlying offense, including the fact that the murder was
26 premeditated, that Mosley had an exceedingly trivial motive, and that Mosley demonstrated
27 "extreme dispassion and callousness" by burglarizing the victim's home after the murder. *Id.*
28 The Governor noted that the police reports reflect that Mosley's friend informed the police

1  that "while they were burglarizing the home, it was necessary for them to step around
2  Mr. Wallace's dead body on the garage floor to remove some of the property." *Id.* Citing
3  these factors as evidence, the Governor found that the murder was "especially heinous," and
4  that Mosley was not suitable for parole. *Id*.

### b. State Court Habeas Proceedings

After the Governor's decision, Mosley sought habeas corpus relief in the state courts. On March 22, 2006, the Marin County Superior Court issued a decision denying Mosley's petition. The court rejected each of Mosley's arguments, finding that Mosley's "subjective expectation of the length of his indeterminate term . . . does not create an entitlement." Answer, Ex. 2. The court also held that administrative review of parole does not violate the Ex Post Facto Clause. Furthermore, the court's decision referenced "Petitioner's own recitation of the Governor's stated reasons for the reversal," and held that the Governor's "decision was not arbitrary or capricious and that it [was] supported by some evidence." *Id.* This was the highest state court to issue a reasoned decision addressing the merits of Mosley's claim, and this Court therefore reviews the reasoning of the decision to determine whether it is in accord with clearly established federal law. *LaJoie v. Thompson*, 217 F.3d 911, 918 n.6 (9th Cir. 2002).

## III. LEGAL STANDARD

Under California law, prisoners serving an indeterminate sentence for second degree murder "may serve up to life in prison, but . . . become eligible for parole consideration after serving minimum terms of confinement." *In re Dannenberg*, 34 Cal. 4th 1061, 1078 (2005). Although the BPT must "normally set a parole release date" before the minimum term has been served, an inmate "shall be found unsuitable for parole and denied parole if, in the judgment of the [BPT], the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 C.C.R. § 2402(a). Any decision reached by the BPT is reviewable by the Governor within 30 days of the determination. Cal. Penal Code § 3041.2. In conducting that review, the Governor "may only affirm, modify or reverse the decision of the

3

1  parole authority on the basis of the same factors which the parole authority is required to
2  consider." Cal. Const. Art. 5, § 8.
3      Both the BPT's and the Governor's decisions must be supported by "some evidence"
4  to satisfy the requirements of due process. *McQuillion*, 306 F.3d 895, 904 (9th Cir. 2002). A
5  determination of whether the "some evidence standard is met does not require examination of
6  the entire record. . . . Instead, the relevant question is whether there is any evidence in the
7  record that could support the conclusion reached by the disciplinary board." *Superintendent*
8  *v. Hill*, 472 U.S. 445, 455-56 (1985). Additionally, the evidence underlying the decision
9  must have some indicia of reliability. *McQuillion*, 306 F.3d at 904. A relevant factor in
10 determining whether the evidence underlying the decision has some indicia of reliability is
11 whether the prisoner was afforded an opportunity to appear before, and present evidence to,
12 the BPT. *See Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1399 (9th Cir. 1987).
13     The Antiterrorism and Effective Death Penalty Act ("AEDPA") limits the authority of
14 federal courts to issue a writ of habeas corpus. Under AEDPA, a district court may only
15 grant a petition challenging a state conviction or sentence on the basis of a claim that was
16 "adjudicated on the merits" in state court if the state court's adjudication of the claim:
17 "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,
18 clearly established Federal law, as determined by the Supreme Court of the United States; or
19 (2) resulted in a decision that was based on an unreasonable determination of the facts in
20 light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The
21 first prong of the Act applies both to questions of law and to mixed questions of law and fact.
22 *Williams v. Taylor*, 529 U.S. 362, 407-07 (2001). The second prong applies to decisions
23 based on factual determinations. *Miller-El v. Cockrell*, 537 U.S. 332, 339 (2003).
24     A state court has "adjudicated" a petitioner's claim on the merits for purposes of
25 § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of
26 the substance of the constitutional claim advanced, rather than denying the claim on the basis
27 of a procedural or other rule precluding state court review on the merits. *Lambert v.*
28 *Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). It is error for a federal court to review *de novo* a

4

claim that was adjudicated on the merits in state court. *See Price v. Vincent*, 538 U.S. 634, 638-43 (2003).

"Clearly established federal law, as determined by the Supreme Court of the United States . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. The "some evidence" standard identified in *Hill* is clearly established federal law in the parole context for AEDPA purposes. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128-29 (9th Cir. 2006). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. Additionally, a state court decision is contrary to federal law if it "applies a rule that contradicts the governing law." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Importantly, state court decisions are not required to cite Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously and incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. *Holland v. Jackson*, 542 U.S. 649, 651 (2004) (per curiam). Moreover, the "unreasonable application" clause is objective, and the federal court should ask only if it the state court decision was reasonable, not whether other federal courts have applied federal law in the same manner as the state court. *Williams*, 529 U.S. at 409.

5

A federal court reviewing a state prisoner's habeas corpus petition may also grant the writ if it concludes that the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative relevant evidence, central to petitioner's claim, that was properly presented and made part of the state-court record. *Taylor v. Maddox*, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. DISCUSSION

### a. Due Process Violation

First, Respondent argues that Mosley does not have a liberty interest in parole, and therefore the Governor's reversal does not implicate due process concerns. However, this argument has been rejected by the Ninth Circuit, which has held that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion*, 306 F.3d at 902. While a recent California Supreme Court decision may have cast some doubt on the continued existence of this right, *see Dannenberg*, 34 Cal. 4th 1061, the Ninth Circuit has since determined that "California inmates continue to have a liberty interest in parole after *In re Dannenberg*." *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1125 (9th Cir. 2006). "This liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Id.* at 1127 (citation omitted). Therefore, the argument that Mosley does not have a liberty interest in parole is without merit.

Mosley argues that it was improper for the state courts to deny his petition for a writ of habeas corpus based on the Governor's decision to reverse the decision of the BPT. First, Mosley relies on California Code of Regulations, title 15, § 2402(b), which requires the BPT and Governor to consider "all relevant, reliable information . . . in determining suitability for

6

parole." Mosley argues that the Governor's decision to reverse the BPT's grant of parole was supported by "unreliable" evidence and "patently unreasonable" conclusions, and therefore violated his right to due process. Traverse at 5. In making the parole suitability determination, the Governor viewed Mosley's "prison conduct record [as] a negative factor weighing against his parole." Answer, Ex. 2. The Governor also cited Mosley's prior alcohol and drug habits as tending to support a finding that he currently poses a threat to public safety. Mosley argues that the record did not tend to demonstrate current violent tendencies, and therefore did not constitute a legitimate basis to deny parole under 15 C.C.R. § 2402(a). He further argues that the Governor must have reached an unreasonable conclusion because he believes that this evidence does not support a finding that he is currently an unreasonable risk to society or a threat to public safety.

However, the plain language of § 2402(b) negates Mosley's argument. The section defines as "relevant, reliable information . . . the circumstances of the prisoner's social history," as well as whether the "prisoner has engaged in serious misconduct in prison or jail." 15 C.C.R. § 2402(b), (c). Therefore, the BPT and Governor properly considered Mosley's past drug and alcohol use, as well as his disciplinary record in prison, when determining Mosley's suitability for parole. In reversing the decision of the BPT, the Governor recognized that Mosley had been disciplined for failing to report to work as recently as 2004 and noted that Mosley's failure "to report to his work assignments . . . demonstrates his repeated and continued disregard for and unwillingness or inability to curb his behavior to the rules of his environment [which] . . . is of great concern to me since the murder committed by Mr. Mosley was employment related." Answer, Ex. 3. The Governor's conclusions based on those factors is reasonable and provide some evidence in support of his decision to deny parole. Therefore, Mosley's argument that the Governor's decision is unreasonable is without merit.

Mosley also argues that "persistent reliance on the commitment offense to deny parole not only risks dependence upon an unreliable factor, [but] it may also amount to a violation of due process." Traverse at 5 (citing *Biggs v. Terhune*, 334 F.3d 910, 917 (9th Cir. 2003)).

7

1  Mosley asserts that such continued reliance "converts an indeterminate life sentence into the
2  infinitely harsher sentence of life in prison without chance of parole." *Id.* at 6. Again,
3  however, the plain language of the statute permits the BPT and the Governor to consider the
4  nature of the base commitment offense in determining parole suitability. *See* 15 C.C.R.
5  § 2402(c). Under the regulations, factors tending to show unsuitability for parole include
6  whether the commitment offense was perpetrated in an "especially heinous, atrocious or
7  cruel manner," as evinced by a murder that was "dispassionate and calculated,"
8  demonstrating an "exceptionally callous disregard for human suffering," or for which there
9  was a "very trivial" motive in relation to the offense *Id.* at (c)(1)(B), (D), (E). In making the
10 determination that Mosley was unsuitable for parole, the Governor noted that the murder was
11 "especially heinous" because it was premeditated, that Mosley demonstrated "extreme
12 dispassion and callousness" after the murder, and that there was an "exceedingly trivial
13 motive" for the crime. These factors, taken together, provide "some evidence" that Mosley
14 was unsuitable for parole and that his release would pose an unreasonable public-safety risk.
15        Moreover, in *Biggs*, the Ninth Circuit was discussing whether repeated reliance on the
16 commitment offense would violate due process, an issue not before that court, thereby
17 rendering the language regarding this matter dicta. Consequently, that portion of *Biggs* does
18 not create binding precedent, and it is insufficient to establish that the Governor's denial of
19 parole constitutes a violation of Mosley's constitutional rights. *Williams*, 529 U.S. at 412.
20        Mosley also relies on *Irons v. Warden of California State Prison–Solano*, 358 F.
21 Supp. 2d 936 (E.D. Cal. 2005), in support of his argument that the Governor's reversal of the
22 BPT's decision violated his constitutional rights. In *Irons*, the district court reversed the
23 BPT's denial of parole where the stated reason for denial was the nature of the underlying
24 offense. However, the Ninth Circuit recently reversed the district court's decision and
25 reinstated the denial by the BPT in that case, even though the prisoner had the support of the
26 Deputy District Attorney, his "conduct ha[d] been exemplary" for sixteen years, and he
27 completed numerous self help, substance abuse, violence, and vocational programs. *Irons v.*
28 *Carey*, 479 F.3d 658 (9th Cir. 2007).

8

In overturning the district court's issuance of a writ of habeas corpus, the Ninth Circuit held that the BPT's determination was proper because there was "'some evidence' to support the Board's determination that Irons was unsuitable for parole under California law" solely because "Iron's crime was . . . cruel or vicious." *Id.* at 664 (where the petitioner, after an argument over the alleged theft of property, shot and stabbed his roommate, left the body wrapped in a sleeping bag for 10 days, and then dumped it in the ocean). The court specifically limited its holding by noting that "due process was not violated when [the] prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." *Id.* at 665. Therefore, while the reasoning of *Irons* is instructive in the instant case, it is distinguishable on its facts because Mosley has already served the minimum term of confinement for the underlying offense.

Nevertheless, while Mosley has reached the minimum term of confinement, both the Governor's decision and that of the state courts are supported by some evidence. The Governor based his decision to reverse the BPT on a finding that the commitment offense was "especially heinous," in addition to Mosley's prison disciplinary record, including receiving counseling as recently as 2004 and his prior drug and alcohol use. While Mosley has already served the minimum term of confinement for his sentence, he does not share the same exemplary prison record and support enjoyed by the petitioner in *Irons*. The Governor's determination is neither an unreasonable determination of the facts in light of the evidence presented, nor a decision that is contrary to or an unreasonable application of federal law. "California's parole scheme does not offend due process by allowing the [BPT] to predict that an inmate presents a present danger based on a murder that he committed many years ago." *Barton v. Ayers*, No. C 06-3646, 2007 WL 1068199 (N.D. Cal. Apr. 10, 2007). Indeed, parole may properly be denied based on a consideration of the facts of the commitment offense that exceed the necessary minimum elements, as these facts may tend to indicate that the prisoner is unsuitable for parole. *See Dannenberg*, 34 Cal. 4th at 1071; *In re Rosenkrantz*, 29 Cal. 4th 616, 682-83 (2002).

9

1    Here, the Governor concluded that the facts of the commitment offense demonstrate
2 that the murder was committed in an exceptionally cruel or callous manner. This
3 consideration, combined with Mosley's prison record, provides some evidence that he is a
4 threat to public safety and therefore justifies reversal of the BPT's decision under California
5 law. Thus, the state courts applied clearly established federal law and arrived at a conclusion
6 that was in accord with, and not contrary to, that law. Moreover, both the state court and the
7 Governor made reasonable determinations of the facts and properly applied relevant law to
8 those facts. Accordingly, the Court hereby DENIES Mosley's petition for a writ of habeas
9 corpus based on his claim that his due process rights were violated.

### b. Ex Post Facto Clause Violation

Mosley next claims that the Governor's reversal of the BPT's finding of parole suitability violated his constitutional rights under the Ex Post Facto Clause because the Governor did not have final parole authority at the time Mosley was sentenced in 1985. The law was changed in 1988 when voters approved Proposition 89, which added section 8(b) to Article V of the California Constitution and gave the Governor the right to review BPT decisions. However, the Ninth Circuit has determined that the new law creates "a procedural rather than a substantive change," and that "ex post facto principles do not bar application of the new law to those convicted and sentenced before [the law's] effective date." *Johnson v. Gomez*, 92 F.3d 964, 965 (9th Cir. 1996). Therefore, Mosley's argument has no merit, and this claim for relief is DENIED.

### c. Plea Agreement Violation

Mosley also argues that "the Governor's retroactive usage of the power afforded him under Article V, § 8(b) of the California Constitution to reverse his grant of parole has resulted in an extension of the actual amount of time he was to serve in prison under the plea agreement." Petition at 9. However, Mosley does not provide any supporting facts to show that terms of his plea agreement were violated, nor does he provide any legal precedent for this argument. This is insufficient to support Mosley's petition, as "conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James*

10

*v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Boehme v. Maxwell*, 423 F.3d 1056, 1058 (9th Cir. 1970). Because Mosley fails to allege the legal or factual basis for habeas relief based on a violation of his plea agreement, this claim for relief is therefore DENIED.

### d. Denial of Right to Jury Trial

Finally, Mosley argues that under *Blakely v. Washington*, 542 U.S. 296 (2004), the Governor violated his right to a jury trial and to due process under the Sixth and Fourteenth Amendments by considering factors not determined by a jury, which resulted in an extension of his sentence. However, Mosley has no Sixth Amendment right to a jury trial with regard to the facts underlying the Governor's decision to deny parole. *McQuillion*, 306 F.3d at 904. Rather, the factors underlying the determination must only have "some indicia of reliability," *id.*, which may include the petitioner's presence at and participation in the parole hearing, *see Pedro*, 825 F.2d at 1399. Whereas the Court in *Blakely* held that facts not determined by the jury could not be used by a judge to extend the sentence beyond the statutory maximum, 542 U.S. at 301, the statutory maximum here is life in prison, a sentence that was determined many years before the Governor's decision. *Blakely* is therefore inapplicable to this case. Moreover, Mosley was afforded the opportunity to appear at and participate in the parole hearings, the evidence presented therein was sufficiently reliable for the BPT and Governor to reach a parole suitability determination, and such a determination did not result in a sentence that is beyond the statutory maximum sentence.

Nor does Mosley have a due process right to a jury determination under California's parole scheme. *See* Cal. Penal Code §§ 3041(b) *et. seq.* The BPT, Governor, and state courts are bound to apply California law to determine parole suitability. *Irons*, 479 F.3d at 662; *see also Bd. of Pardons v. Allen*, 428 U.S. 369 (1987); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). As discussed above, the Governor, BPT and state courts considered a number of statutorily defined factors, and they properly adhered to California law in considering Mosley's parole. Therefore, Mosley's claim for relief based on a violation of his right to a jury trial is without merit, and the Court DENIES his claim for habeas relief on this basis.

11

## V. CONCLUSION

In sum, the state court's decision that the Governor's reversal of the BPT's finding of parole suitability was supported by some evidence was neither contrary to, nor an unreasonable application of, clearly established federal law as defined by the Supreme Court, nor was it an unreasonable determination of the facts. The state court issued a reasoned decision denying habeas corpus based on the Governor's parole suitability determination. Although Mosley has a liberty interest in parole, he was not denied that interest without due process of law. Furthermore, the Governor's reversal did not violate the Ex Post Facto Clause of the Constitution, nor does Mosley allege sufficient facts to demonstrate a violation of his plea agreement. Finally, Mosley is not entitled to a jury determination of the facts that serve as the basis for parole eligibility determinations. For these reasons, the Court hereby DENIES Mosley's petition for a writ of habeas corpus on the merits. The Clerk shall enter judgment in accordance with this order and close the file.

**IT IS SO ORDERED.**

Dated: 04/27/07

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT