IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RON MOSLEY,

          Petitioner,

v.

VINCENT CULLEN,

          Respondent.

NO. C05-4260 TEH

ORDER GRANTING MOTION FOR BAIL

      This matter came before the Court on December 21, 2010, on Petitioner Ron Mosley's motion for bail. After carefully considering the parties' written and oral arguments, the Court now GRANTS the motion for the reasons discussed below.

**BACKGROUND**

      After pleading guilty to second-degree murder, Mosley was sentenced on December 27, 1985, to a prison term of fifteen years to life, with a minimum parole eligibility of ten years. He is currently housed at San Quentin State Prison.

      On October 24, 2004, the California Board of Prison Terms conducted Mosley's fourth parole review hearing. The panel recommended that Mosley be released on parole, and the Board formally approved Mosley for parole on February 19, 2005. However, Governor Arnold Schwarzenegger reversed the Board's grant of parole on March 15, 2005.

      This Court denied Mosley's challenge to the Governor's reversal on May 1, 2007, and Mosley timely appealed. On November 24, 2010, the United States Court of Appeals for the Ninth Circuit "reverse[d] and remand[ed] with instructions to the district court to grant the writ, ordering the Governor's decision vacated and the Board's February 2005 decision reinstated." *Mosley v. Oroski*, Nos. 08-15327 & 08-15389, 2010 WL 4813677, at *2 (9th Cir. Nov. 24, 2010) (footnote omitted). The appellate court determined that "'some

evidence' of present dangerousness is lacking," *id.*, and also concluded that "[t]he record indicates that Mosley matured emotionally and had sincere remorse regarding the offense, and that he had realistic plans for release," *id.* at *1 n.3.  However, the court has yet to issue the mandate, and Respondent Vincent Cullen, acting warden at San Quentin State Prison ("Warden"), has moved to stay issuance of the mandate pending an anticipated petition for a writ of certiorari before the United States Supreme Court.

On December 14, 2010, the appellate court remanded this case to this Court "for the limited purpose of determining whether petitioner is entitled to bail or release pending final resolution of the case." Ex. A to Loeb Decl. in Supp. of Mot. for Bail.  Mosley filed a motion for bail the following day, and this Court granted Mosley's motion to shorten time.  Mosley also filed a timely supplemental brief, as ordered by this Court, proposing conditions for Mosley's release.  The Warden filed a timely opposition on December 17, 2010, and Mosley filed a timely reply on December 20, 2010.

**LEGAL STANDARD**

Rule 23 of the Federal Rules of Appellate Procedure governs "release on bail of state prisoners seeking habeas corpus relief in federal court." *Marino v. Vasquez*, 812 F.2d 499, 507 (9th Cir. 1987).  Where, as here, "a decision ordering the release of a prisoner is under review, the prisoner must – unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise – be released on personal recognizance, with or without surety." Fed. R. App. P. 23(c).  The presumption of release pending appeal "can be overcome if the traditional factors regulating the issuance of a stay weigh in favor of granting a stay." *O'Brien v. O'Laughlin*, 130 S. Ct. 5, 6 (2009) (citations omitted) (Breyer, Circuit Justice 2009).

> These factors are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits, which, in this context [where the Court of Appeals granted the habeas petition], means that it is reasonably likely that four Justices of [the Supreme] Court will vote to grant the petition for writ of certiorari, and that, if

2

> they do so vote, there is a fair prospect that a majority of the Court will conclude that the decision below was erroneous; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The Warden argues that the presumption established by Rule 23(c) does not apply in this case because the appellate court ordered that the Board's decision finding Mosley suitable for parole be reinstated, not that Mosley be released, and there is therefore no "decision ordering the release of a prisoner." Fed. R. App. P. 23(c). The Court rejects this argument. Unless the Board were to institute rescission proceedings, *see Mosley*, 2010 WL 4813677, at *2 n.4, the consequence of reinstating the Board's suitability finding would be release, and the Warden has cited no authority for the proposition that only an order for immediate release of a prisoner gives rise to the Rule 23(c) presumption. Moreover, even if the presumption did not apply, the four factors set forth above favor Mosley's release for the reasons discussed below.

**DISCUSSION**

The procedural posture of this case appears to be materially indistinguishable from the circumstances considered by the Ninth Circuit in two recent cases. In *Hayward*, the Ninth Circuit considered Hayward's habeas petition based on then-Governor Gray Davis's decision to overturn a grant of parole by the Board. *Hayward v. Marshall*, 603 F.3d 546, 550 (9th Cir. 2010) (en banc). Although the en banc panel ultimately affirmed the district court's denial of the petition, *id.* at 563-64, the three-judge panel initially reversed the district court and remanded the case with instructions to grant the writ, *Hayward v. Marshall*, 512 F.3d 536, 548 (9th Cir. 2008), *overruled by Hayward*, 603 F.3d 546 (9th Cir. 2010) (en banc). While the en banc proceedings were pending, Hayward was released on bail. *Hayward*, Case No. 06-55392, Order (docket no. 41) (9th Cir. Jan. 3, 2008); *Hayward v. Marshall*, Case No. C05-7239-GAF, Civil Minutes for Hearing re: Conditions of Release (C.D. Cal. Jan. 30, 2008) (Ex. A to Pet'r's Supp. Brief Re: Conditions of Release).

3

1    Similarly, in *Pearson*, the Ninth Circuit also considered a habeas petition challenging
2 the Governor's reversal of a grant of parole by the Board. *Pearson v. Muntz*, 625 F.3d 539,
3 546 (9th Cir. 2010) (per curiam). The district court had granted Pearson's habeas petition
4 "and issued an order requiring the State to release Pearson within thirty days." *Id.* The
5 appellate court originally stayed the district court's order for Pearson's release pending
6 appeal while the court's en banc proceedings in *Hayward* were ongoing. *Id.* After *Hayward*
7 was decided, however, the Ninth Circuit lifted the stay on Pearson's release pending appeal.
8 *Id.* at 550.
9    The Warden's opposition papers fail to distinguish – or even attempt to distinguish –
10 *Hayward* or *Pearson*. The Warden does cite another recent Ninth Circuit case in which the
11 appellate court granted a stay of a district court's release order pending appeal, *Haggard v.*
12 *Curry*, --- F.3d ---, 2010 WL 4978842 (9th Cir. 2010), but that case involved a habeas
13 petition challenging a decision by the Board to deny parole, and not a Governor's reversal of
14 the Board's grant of parole, *id.* at *1. Although the Ninth Circuit stayed the district court's
15 order to release Haggard pending appeal, the court's analysis relied on its conclusion that
16 "where the Board's parole denial decision is not based on 'some evidence' of current
17 dangerousness, the California-created but federally enforceable, liberty interest in parole
18 gives the prisoner only the right to a redetermination by the Board consistent with the state's
19 'some evidence' requirement, not the right to release on parole." *Id.* at *5. The court
20 explicitly did "not consider the contours of inmates' federally protected liberty interest in
21 cases [like Mosley's] involving gubernatorial vetoes," but noted that "[a]t least one published
22 California appellate opinion . . . has held that reinstatement of the Board's release order,
23 rather than remand to the Governor, is appropriate when the Governor's veto decision fails to
24 meet the state's 'some evidence' standard." *Id.* at *4 n.3 (citing *In re McDonald*, --- Cal.
25 Rptr. 3d ---, 2010 WL 4296703 (Ct. App. Nov. 2, 2010)). *Haggard* therefore does not alter
26 the conclusion reached by the Ninth Circuit in *Hayward* and *Pearson* that a petitioner who
27 successfully challenges the Governor's reversal of a grant of parole by the Board is entitled
28 to release pending appeal.

4

Even in the absence of such precedent, this Court would still find that Mosley should be released pending appeal based on application of the *Hilton v. Braunskill* factors for granting a stay. The first such factor is likelihood of success on the merits, "which, in this context, means that it is reasonably likely that four Justices of [the Supreme] Court will vote to grant the petition for writ of certiorari, and that, if they do so vote, there is a fair prospect that a majority of the Court will conclude that the decision below was erroneous." *O'Brien*, 130 S. Ct. at 6. In this case, the Warden has made no argument, let alone showing, of the first part of this test: that it is reasonably likely that four Justices will vote to grant a petition for writ of certiorari. The Warden has not, for example, cited any evidence of a split among the circuits or a conflict between Ninth Circuit authority and the decision of any state court of last resort. *See* Sup. Ct. R. 10 (explaining considerations governing review on certiorari, which "will be granted only for compelling reasons").

As to whether the Supreme Court would reverse the Ninth Circuit's decision if it were to grant certiorari, the Warden repeats arguments that the state has repeatedly made: that "California inmates do not have a federal liberty interest in parole," and that "no clearly established United States Supreme Court precedent requires that parole decisions be supported by some evidence." Opp'n at 3-6. The Ninth Circuit squarely rejected both arguments in *Pearson*, 625 F.3d at 547, explaining that "[w]hat the State fails to recognize . . . is that state-created rights may give rise to liberty interests that may be enforced as a matter of federal law. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005). . . . The principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." The court further explained that, "[h]aving guaranteed the prisoners of the state that they will not be denied a parole release date absent 'some evidence' of current dangerousness, California is not permitted under the federal Constitution arbitrarily to disregard the 'some evidence' requirement in any particular case." *Id.* at 550. The Warden has failed to persuade the Court of any likelihood that the Supreme Court will grant a writ of certiorari and reverse *Pearson* and the other cases on which the appellate decision in this case rests. *See Mosley*, 2010 WL 4813677, at \*2-3

5

(explaining that *Hayward, Pearson*, and two other cases – *Pirtle v. Cal. Bd. of Prison Terms*, 611 F.3d 1015 (9th Cir. 2010), and *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010) – "have . . . settled the existence of a California prisoner's liberty interest in parole and the right to parole in the absence of 'some evidence' of future dangerousness under state law").

Turning to the remaining *Hilton v. Braunskill* factors, the Warden also incorrectly weighs the injury to the state if release is granted, the injury to Mosley if release is denied, and where the public interest lies. First, the Warden mistakenly relies on the Ninth Circuit's decision in *Haggard*, which, as explained above, concerned review of the denial of parole by the Board, not a reversal of the grant of parole by the Governor. This distinction is material because the remedy in the latter case is not a return to the Governor or to the Board, but instead reinstatement of the Board's decision finding the petitioner suitable for parole. *E.g., Mosley*, 2010 WL 4813677, at *4-5. Thus, unlike in *Haggard*, the Ninth Circuit's decision that a writ must be granted in this case requires that Mosley be released, not simply that he receive a new parole hearing. Mosley's interest in release – and the injury he will suffer if release is not granted – is therefore substantially greater than that considered by the *Haggard* court. *See, e.g., Mezhbein v. Salazar*, Case No. CV 06-8059-DOC (MLG), 2008 WL 1908533, at *3 (C.D. Cal. Apr. 27, 2008) ("[I]f the stay [of a release order pending appeal] is granted, Petitioner will face a prolonged period of continued incarceration when the Court has already determined that the denial of parole was not supported by the evidence. There can be no doubt that a stay will substantially injure Petitioner.").

The Warden also premises his argument on the assumption that Mosley will endanger public safety if he is released. However, the Ninth Circuit has already determined that, as of the Governor's March 2005 reversal of the Board's grant of parole, there was no evidence that Mosley was currently dangerous. *Id.* at *4. Although the Warden argues that the Board has found Mosley unsuitable for parole at four subsequent hearings,[1] he presents no evidence

---

[1] Mosley objects to the Court's consideration of the two documents attached to the Hooley declaration: a status report showing Mosley's subsequent denials of parole and a copy of the decision from Mosley's most recent parole hearing on September 17, 2009. The Court finds these objections to be moot because it concludes that release is appropriate even if the subsequent parole denials are considered.

6

that the Board relied on any additional evidence showing current dangerousness.  To the contrary, there is no indication in the record that Mosley has had any disciplinary infractions since 2004, that more recent psychological evaluations of Mosley have been less favorable, that his post-release plans have become less stable, or that any other material facts indicate that Mosley is less suitable for parole today than when the Board found him suitable in 2004.[2]  The state and the public therefore have no interest in Mosley's continued incarceration, particularly where, as here, the Warden presents no argument or evidence that Mosley is a flight risk.  Any claimed injury resulting from failure to respect the parole system's determinations of Mosley's unsuitability for parole "is self-inflicted." *Mezhbein*, 2008 WL 1908533, at *2.

Mosley has served twenty-five years on his fifteen-years-to-life sentence, and the Ninth Circuit has determined that Mosley should have been released five years ago because there was no evidence that he was currently dangerous at the time.  Nothing in the record indicates that a contrary conclusion should be reached today, and the Court therefore finds the balance of equities, as well as the public interest, to weigh substantially in Mosley's favor.  The Court refers this matter to the General Duty Magistrate Judge to set appropriate conditions for bail.

**CONCLUSION**

For the reasons discussed above, Mosley's motion for bail is GRANTED.  IT IS HEREBY ORDERED that:

1.    The Warden shall release Mosley upon (1) posting of an appearance bond in the amount of $100,000, secured by affidavits of surety without justification signed by Mosley's mother, Hilda Smith, and sister, Francine Tournour, or other sureties determined to be

---

[2] Although the record in this case does not contain evidence of Mosley's subsequent history, the Warden notably failed to rebut Mosley's contentions at the hearing that his prison record has been exemplary, that he has undergone a series of rehabilitative programming, and that his most recent psychological evaluation gave him the lowest possible risk rating.

suitable by the General Duty Magistrate Judge, and (2) the setting of conditions of release as determined appropriate by the General Duty Magistrate Judge.

2. This Court leaves it to the General Duty Magistrate Judge's discretion whether to require Mosley's personal appearance to acknowledge the ordered conditions of release, or to allow counsel to make other arrangements to expedite Mosley's release. If the General Duty Magistrate Judge requires a personal appearance, then the Warden shall produce Mosley for a hearing before the General Duty Magistrate Judge within seven days of the date of this order.

3. This order shall remain in effect until the United States Court of Appeals for the Ninth Circuit has issued it mandate and the time for the Warden to file a petition for writ of certiorari in the United States Supreme Court has expired or, if the Warden files a petition for writ of certiorari, until the petition for writ of certiorari and any subsequent briefing on the merits are ruled upon by the United States Supreme Court. If the decision directing this Court to grant Mosley's petition for writ of habeas corpus is reversed, Mosley shall abide by that decision by surrendering himself to state custody within 24 hours of any such decision.

4. Any violation of any of the conditions imposed by the General Duty Magistrate Judge or by this Court shall subject Mosley to immediate arrest.

5. As soon as possible, the Clerk shall provide a copy of this order to the General Duty Magistrate Judge and to Pretrial Services, which, unless otherwise ordered by this Court or the General Duty Magistrate Judge, shall be responsible for supervising Mosley's release as long as this order remains in effect.

**IT IS SO ORDERED.**

Dated: 12/21/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT