IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RON MOSLEY,

    Petitioner,

v.

VINCENT CULLEN,

    Respondent.

NO. C05-4260 TEH

ORDER DENYING RESPONDENT'S MOTION TO REVOKE BAIL

This matter came before the Court on February 28, 2011, on Respondent Vincent Cullen's motion to revoke Petitioner Ron Mosley's bail. After carefully considering the parties' written and oral arguments, the Court now DENIES the motion for the reasons discussed below.

**BACKGROUND**

After pleading guilty to second-degree murder, Petitioner Ron Mosley was sentenced on December 27, 1985, to a prison term of fifteen years to life, with a minimum parole eligibility of ten years. On October 24, 2004, the California Board of Prison Terms conducted Mosley's fourth parole review hearing. The panel recommended that Mosley be released on parole, and the Board formally approved Mosley for parole on February 19, 2005. However, Governor Arnold Schwarzenegger reversed the Board's grant of parole on March 15, 2005.

On May 1, 2007, this Court denied Mosley's challenges to the Governor's reversal, and Mosley timely appealed. Mosley's appeal raised three issues: that the Governor's reversal of the Board's grant of parole violated (1) due process; (2) the Ex Post Facto Clause; and (3) his plea agreement. On November 24, 2010, the United States Court of Appeals for the Ninth Circuit determined that "'some evidence' of present dangerousness is lacking," and

also concluded that "[t]he record indicates that Mosley matured emotionally and had sincere remorse regarding the offense, and that he had realistic plans for release." *Mosley v. Oroski*, Nos. 08-15327 & 08-15389, slip op. at 4 & n.3 (9th Cir. Nov. 24, 2010). As a result, the court found a violation of Mosley's due process rights and "reverse[d] and remand[ed] with instructions to the district court to grant the writ, ordering the Governor's decision vacated and the Board's February 2005 decision reinstated." *Id.* at 5. Given that disposition, the court found it unnecessary to reach the other two grounds Mosley raised on appeal. *Id.* at 5 n.5. The Ninth Circuit subsequently stayed the mandate upon motion by Respondent, the acting warden at San Quentin State Prison ("Warden"), where Mosley was incarcerated. The Warden's petition for writ of certiorari is currently pending before the United States Supreme Court.

In a separate order, the Ninth Circuit remanded the case to this Court "for the limited purpose of determining whether petitioner is entitled to bail or release pending final resolution of the case." Dec. 14, 2010 Order (Ex. A to Dec. 15, 2010 Loeb Decl.). Following briefing and oral argument, the Court granted Mosley's motion for bail on December 21, 2010, and Mosley was released under conditions set by a magistrate judge on December 23, 2010, including supervision by this district's Office of Pretrial Services. Mosley currently remains released on bail.

On January 24, 2011, the United States Supreme Court ruled that a prisoner subject to California's parole statute receives adequate process when he is allowed an opportunity to be heard and is provided with a statement of the reasons why parole was denied. *Swarthout v. Cooke*, 131 S. Ct. 859, 862 (2011) (per curiam). In the context of a federal habeas challenge to the denial of parole based on due process, the Court explained, "it is no federal concern . . . whether California's 'some evidence' rule of judicial review (a procedure beyond what the Constitution demands) [is] correctly applied." *Id.* at 863. The Court extended the time to file a petition for rehearing to March 10, 2011. Feb. 4, 2011 Letter from Sup. Ct. Clerk (Ex. B to Feb. 15, 2011 Loeb Decl.).

2

1    Following the Supreme Court's decision in *Cooke*, the Ninth Circuit withdrew its
2 November 24, 2010 disposition in this case and stayed further proceedings "pending final
3 resolution of *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010), and *Clay v. Kane*, 384 Fed.
4 App'x 544 (9th Cir. 2010), in this court." Jan. 31, 2011 Order (Ex. A to Feb. 15, 2011 Loeb
5 Decl.).
6    On February 7, 2011, the Warden filed a motion to revoke Mosley's bail and
7 requested an order shortening time so that this matter could be heard on February 14, 2011.
8 This Court granted in part the request to shorten time, setting a February 28, 2011 hearing
9 date and a shortened briefing schedule. Mosley filed a timely opposition brief, and the
10 Warden filed a timely reply. At oral argument, this Court heard from counsel for both
11 parties, as well as statements from the Pretrial Services officer charged with Mosley's
12 supervision.

## DISCUSSION

### I.  Legal Standard

Rule 23 of the Federal Rules of Appellate Procedure governs "release on bail of state prisoners seeking habeas corpus relief in federal court." *Marino v. Vasquez*, 812 F.2d 499, 507 (9th Cir. 1987). Rule 23(b) provides that, "[w]hile a decision not to release a prisoner is under review," a court may order the prisoner detained in the same custody from which release is sought, detained in other appropriate custody, or released with or without surety. Rule 23(d) states that:

> An initial order governing the prisoner's custody or release, including any recognizance or surety, continues in effect pending review unless for special reasons shown to the court of appeals or the Supreme Court, or to a judge or justice of either court, the order is modified or an independent order regarding custody, release, or surety is issued.

The parties dispute whether Rule 23(b) or Rule 23(d) applies here.

In its order shortening time on the Warden's motion, the Court indicated that "the procedural posture of this case is now the same as it was when this Court denied Mosley's first motion for bail on December 16, 2008: namely, this Court has denied Mosley's petition

3

for writ of habeas corpus, and that order remains unresolved on appeal to the United States Court of Appeals for the Ninth Circuit." Feb. 9, 2011 Order at 1. However, this Court has already issued two orders governing Mosley's release: a December 16, 2008 order that denied Mosley's motion for bail, and a December 21, 2010 order granting bail. Based on the plain language of the rules, the Court therefore finds Rule 23(d) to be applicable here. *See Christian v. Frank*, Civ. No. C04-00743 DAE-LEK, 2010 WL 1064732, at *4 (D. Haw. Mar. 22, 2010) (recommendations of magistrate judge) ("This Court . . . finds that Rule 23(b) and (c) only applied to the initial decision whether, and under what terms, to release Petitioner pending the appeal of the Habeas Order. Now that Respondents seek either a modification of those initial decisions or the issuance of a new ruling on Petitioner's custody, Rule 23(d) applies.").[1]

"A court reviewing an initial custody determination pursuant to Rule 23(d) must accord a presumption of correctness to the initial custody determination . . ., whether that order directs release or continues custody, but that presumption . . . may be overcome if the traditional stay factors so indicate." *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). Those factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 776.

The parties dispute whether this Court's 2008 order denying bail or its 2010 order granting bail is the "initial order" that is presumed to be correct under Rule 23(d). While the Court is inclined to adopt Mosley's position that the 2010 order is entitled to a presumption of correctness, it need not resolve this issue definitively because, as discussed below, the traditional stay factors would overcome any presumption that Mosley should remain in custody pending ultimate resolution of his appeal.

---

[1] The *Christian* court also concluded that a district court lacks jurisdiction to modify a custody order under Rule 23(d), which refers only to appellate judges and Supreme Court justices. However, the parties in this case agree that the Ninth Circuit's remand order provides this Court with jurisdiction to rule on the Warden's motion.

4

## II. Analysis of Stay Factors

### A. Likelihood of Success on the Merits

As noted above, Mosley's appeal challenges the Governor's reversal of the Board's grant of parole on three grounds: (1) that it violated due process; (2) that it violated the Ex Post Facto Clause; and (3) that it violated his plea agreement. Mosley's due process challenge appears to have been foreclosed by *Cooke*, and this Court does not find that Mosley has any likelihood of succeeding on the merits of that claim. However, for the reasons discussed below, the Court finds that Mosley has a substantial likelihood of succeeding on his ex post facto challenge.[2]

Mosley's ex post facto challenge is based on the undisputed fact that the Governor did not have the power to reverse the Board at the time Mosley was sentenced in 1985; the Governor did not gain that power until Proposition 89 passed in 1988 and added section 8(b) to Article V of the California constitution. In *Johnson v. Gomez*, 92 F.3d 964 (9th Cir. 1996), the Ninth Circuit rejected a similar challenge based on its determination that "it cannot be said *with certainty* that the [Board] would have granted Johnson parole had it possessed the final review authority." *Id.* at 967 (emphasis added). This Court relied on *Johnson* in denying Mosley's habeas petition.

Upon further review, the Court concludes that its reliance on *Johnson* was erroneous. In 2000, the Supreme Court explained that:

> When [a retroactive] rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule. . . . In the case before us, respondent must show that as applied to his own sentence the law created *a significant risk* of increasing his punishment.

*Garner v. Jones*, 529 U.S. 244, 255 (2000) (emphasis added). Thus, the correct test is – and was, at the time of this Court's 2007 order – whether Mosley can show a "significant risk"

---

[2]The Court expresses no opinion on Mosley's likelihood of success on his plea agreement claim.

5

that the change in law increased his punishment, and not whether he can make such a showing "with certainty." *See, e.g., Gilman v. Schwarzenegger*, --- F.3d ---, 2011 WL 198435 (9th Cir. 2011) (applying *Garner*'s "significant risk" language to an ex post facto challenge); *Brown v. Palmateer*, 379 F.3d 1089, 1095 (9th Cir. 2004) (same); *Thomas v. Yates*, 637 F. Supp. 2d 837, 850-54 (E.D. Cal. 2009) (explaining that *Johnson* does not preclude an ex post facto challenge to article V, section 8(b) under *Garner*, and citing several other district courts that applied *Garner* to similar challenges but also two courts that concluded that *Garner* did not overrule *Johnson*). Indeed, the Warden acknowledges that "Mosley's ex post facto claim is an 'as applied' argument based on *Garner*," and does not argue that *Johnson* should control the outcome of this case. Reply at 4.

The Warden's only argument as to why Mosley would not be likely to succeed on his ex post facto claim is that "Mosley has not and cannot overcome the presumption that the Governor followed the law and fulfilled his obligations when he reviewed and reversed the Board's decision." *Id.* The Warden correctly observes that, under *Garner*, "[a]bsent a demonstration to the contrary," the Board and the Governor are presumed to have followed their "statutory commands and internal policies in fulfilling [their] obligations." 529 U.S. at 256. However, upon careful consideration, the Court concludes that the Ninth Circuit is likely to find "a demonstration to the contrary" in this case. Unlike in other cases where district courts have denied similar challenges, Mosley does not rely on statistics concerning the Governor's high reversal rate when the Board has found prisoners suitable for parole. *See, e.g., Lewis v. Veal*, No. 2:06-cv-0481-MCE TJB, 2011 WL 475462, at *7 (E.D. Cal. Feb. 3, 2011); *Seiler v. Brown*, No. C04-2911 PJH, 2007 WL 2501518, at *5 (N.D. Cal. Aug. 30, 2007). Instead, he presents "specific facts and details that . . . the Governor did not follow the statutory commands and internal policies in fulfilling his obligation to review decisions of the [Board]" in this case. *Seiler*, 2007 WL 2501518, at *5. Even though the Ninth Circuit withdrew its November 24 decision, it appears to have done so because the Supreme Court's *Cooke* opinion stated that federal courts should not consider the "some evidence" standard when analyzing habeas petitioners' due process claims. There is no

6

1  indication that the court will, upon further review, change its opinion that the Governor did
2  not have "some evidence" to support his decision to reverse the Board's grant of Mosley's
3  parole. Given that the court has already found (albeit in a now withdrawn decision) that the
4  Governor did not follow California law, it is highly likely to find, when reviewing Mosley's
5  ex post facto challenge, that the Governor failed to follow statutory commands and internal
6  policies. Therefore, it is substantially likely that Mosley will prevail on his as-applied
7  challenge under *Garner* – that is, on his contention that the state court's summary denial of
8  his ex post facto claim was an unreasonable application of the Supreme Court's decision in
9  *Garner*.

10  At oral argument, the Warden argued that *Cooke* foreclosed any consideration by a
11  federal court of whether California authorities failed to follow the "some evidence" test.
12  However, it appears that *Cooke* only foreclosed consideration of this issue as part of a due
13  process challenge. There is no indication that the Supreme Court would bar a federal habeas
14  court from examining whether the "some evidence" test were satisfied if, as here, such
15  analysis were necessary to resolve a separate challenge.

### B. Injury to the Parties and the Public Interest

Aside from likelihood of success on appeal, the other three traditional stay factors require a court to balance harms and determine where the public interest lies. The Court's analysis of these factors is necessarily guided by its conclusion that Mosley has a strong likelihood of prevailing on his ex post facto claim on appeal. The Supreme Court explained that:

> Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules. The Court of Appeals in *Carter v. Rafferty*, 781 F.2d 993 (CA3 1986), agreed that the possibility of flight should be taken into consideration, and we concur in that determination. We also think that, if the State establishes that there is a risk that the prisoner will pose a danger to the public if released, the court may take that factor into consideration in determining whether or not to enlarge him. The State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served.

7

> The interest of the habeas petitioner in release pending appeal, always substantial, will be strongest where the factors mentioned in the preceding paragraph are weakest. The balance may depend to a large extent upon determination of the State's prospects of success in its appeal. Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release.

*Hilton*, 481 U.S. at 777-78. Given this language, this Court's earlier statement that "declarations concerning Mosley's performance while on bail are irrelevant to the present motion," Feb. 9, 2011 Order at 1, was incorrect; the Supreme Court has clearly instructed that this Court must assess Mosley's risk of flight and whether he poses a danger to the public, and his performance while on bail is relevant to that analysis.

At the hearing, the Pretrial Services officer informed the Court that Mosley was performing well on bail. He has been attending mental health counseling and anger management classes, and he has also made strides towards obtaining a welding job. The only negative factor raised by the officer was that Mosley missed one drug test in January. However, all other drug tests, including one that occurred two days before the missed test, have been negative, and the supervising officer did not recommend any action – and the magistrate judge did not take any – after the single missed test. The officer explained that Mosley's release has had no negative impact on the public thus far, but that it would be premature to make any definitive recommendation on whether Mosley's continued release would have a positive or negative impact on the public because Mosley has only been under supervision for two months.

The Warden submitted no evidence that Mosley poses any danger to society if he were to continue to be released on bail. The conditions of Mosley's release provide further protection for the public interest, as he has not simply been released on his own personal recognizance. The Warden has also failed to submit any evidence that Mosley poses a flight risk, which seems unlikely given both his performance on bail thus far and that his release was secured by a $100,000 bond with his mother and sister, with whom he appears to have good relations, as sureties. In addition, Mosley has already served more than twenty-five

8

years on his fifteen-years-to-life sentence. Under *Hilton*, all of these factors weigh in favor of Mosley's continued release.

The Warden argues that the state has a strong interest in ensuring the integrity of its criminal justice process, and that Mosley cannot claim any injury from remaining incarcerated because he is a convicted felon who has never, following the Ninth Circuit's withdrawal of its November 24, 2010 decision, been found by any court to be entitled to release.[3] However, although no court has yet found that Mosley is entitled to release, this Court has now concluded that Mosley has a strong likelihood of success on appeal, or, conversely, that the state has not demonstrated a substantial case on the merits of Mosley's ex post facto claim. Accordingly, the injury Mosley would suffer if incarcerated pending appeal is heightened, and the state's interest in keeping him in custody is diminished.

This is particularly true given the extraordinary and unforeseen delays in this case. In a case determining whether an unsuccessful habeas petitioner in the extradition context was entitled to bail pending appeal, the Ninth Circuit listed "unusual delay in the appeal process" as an example of a "special circumstance" that would justify granting bail. *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989).[4] When this Court denied bail to Mosley in 2008, it noted that "some delay occurred in the appeal process as a result of a motion for stay by Respondent," but that "the case is now proceeding and Petitioner filed opening briefs in November, 2008." Dec. 16, 2008 Order at 5. The Court concluded that this schedule did not amount to "the type of extraordinary delay contemplated by the Ninth Circuit in *Salerno*." *Id.* However, Mosley's appeal has now been pending for over two years since that time, and it remains uncertain when a decision will be reached. The Ninth Circuit has stayed consideration of Mosley's appeal until after the Ninth Circuit has resolved *Cooke* and *Clay*.

---

[3] The Warden's initial papers actually took a more extreme position and argued that, following the Ninth Circuit's withdrawal of its November 24, 2010 decision, there is no longer any basis for Mosley to be released on bail. Such a position cannot be justified in light of the Federal Rule of Appellate Procedure 23(b), which contemplates possible release on bail pending review of an order denying release. While there may be no presumption of release in such a case, a court nonetheless has discretion to grant it. *Cf.* Fed. R. App. P. 23(c) (presumption of release when "a decision ordering the release of a prisoner is under review").

[4] The court did not give any guidelines on what would constitute "unusual delay."

Those two cases, in turn, will not be decided until after the Supreme Court finally decides *Cooke*, where the petition for rehearing is not due until March 10. Thus, there could be additional significant delays before the court issues a final decision on Mosley's appeal – which has already been pending for nearly four years. Mosley therefore now presents a much stronger case of "unusual delay" now than he did when the Court rejected his delay argument two years ago.

Given all of the above, the Court finds that the balance of interests weighs in favor of Mosley's continued release. Although the state has an interest in the administration of its criminal justice system, that interest is diminished where, as here, Mosley has a strong likelihood of success on appeal and has already served ten years more than his minimum sentence; there is no evidence that he presents a danger to public safety or a risk of flight; and his appeal continues to be extraordinarily delayed through no fault of his own.

**CONCLUSION**

For all of the above reasons, the Warden's motion to revoke Mosley's bail is DENIED. All previously ordered terms and conditions of release shall remain in full effect.

**IT IS SO ORDERED.**

Dated: 03/04/11

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT